1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9   Golden West Holdings Trust, et al.,        )   No. CV-05-2237-PHX-SMM (Lead)
                                               )   No. CV-05-2238-PHX-JAT (Consol.)
10                                             )   No. CV-05-2239-PHX-JAT (Consol.)
                Plaintiffs,                    )
11                                             )   **ORDER**
    v.                                         )
12                                             )
                                               )
13  United States of America, and Internal    )
    Revenue Service,                           )
14                                             )
                                               )
15              Defendants.                    )
                                               )
16  _____ )

17         Before the Court is the Government's Motion for Summary Judgment (Dkt. 66) filed

18  on September 26, 2008 against Plaintiffs Golden West Holdings Trust ("Golden West"), Tri-

19  Star Real Estate Investment Trust ("Tri-Star"), and William Wadman.  Only Plaintiff

20  Wadman responded[1] (Dkt. 96).  Intervenor Plaintiff Wachovia Bank NA ("Wachovia") also

21  responded (Dkt. 78).  The Government replied (Dkts. 89, 99), and the matter is now fully

22  briefed.  Also before the Court is the Government's Motion for Reconsideration of Order

23  Granting Intervention (Dkt. 74), to which Wachovia responded (Dkt. 93) and the

24  Government replied (Dkt. 94).  Additionally, Wadman filed a "Motion to Enjoin [sic]

25

26  _____

27         [1] Despite multiple extensions, Plaintiffs did not respond to the motion for summary
    judgment within the required time frame.  The Court ordered Plaintiffs to show cause (Dkt.
28  90). At the show cause hearing, the Court ordered Plaintiffs to respond by February 27, 2009
    (Dkt. 92).  Only Wadman responded (Dkt. 96).

1  Wachovia Bank's Response to the Government's Motion for Summary Judgment" (Dkt. 95),

2  which the Court construes as a motion to join Wachovia's response and will grant.

3      Based on the procedural events thus far, the parties appear to have been preparing for

4  trial.   Under 26 U.S.C. § 7429, though, this action is before the Court for a summary

5  determination.  The Court will use the documentation provided with the motion for summary

6  judgment as the basis for its decision.  See Guillaume v. C.I.R., 290 F. Supp. 2d 1349, 1352

7  n. 4 (S.D. Fla. 2003).   However, the Court will not rule upon the motion for summary

8  judgment because the entry of judgment is inappropriate.[2]   See id. (citing 26 U.S.C. §

9  7429(b)).  For reasons discussed below, the Court determines the jeopardy assessment

10 reasonable under the circumstances.  Therefore, the Court will dismiss Plaintiffs' Amended

11 Complaint and deny all pending motions as moot.  See id. at 1356.

## BACKGROUND

13     This is a dispute over the Internal Revenue Service's ("IRS") seizure of cash and

14 property worth more than $1.5 million (Dkt. 21, Am. Comp. ¶¶ 7-9).  In April 2005, IRS

15 agents executed a jeopardy levy against Wadman's property (Dkt. 66, Def.'s Statement of

16 Facts ("DSOF") ¶ 48).  According to the Government, the IRS had recently discovered that

17 Wadman engaged in a fraudulent federal tax refund scheme using Golden West and Tri-Star

18 (Id. ¶¶ 10-11, 22-26).  Despite receiving little or no income, Wadman obtained individual tax

19 refunds in excess of $1.2 million for the 2001 through 2004 tax years (Id. ¶¶ 22-26).

20 Wadman also obtained nearly as much in refunds for Golden West and Tri-Star (Id. ¶¶ 11,

21 17).  Before executing the jeopardy levy, the IRS froze $1.6 million of false refund claims

22 for Golden West and Tri-Star, which they allege led Wadman to flee Florida and create new

25     [2] The parties requested oral argument in connection with the motion for summary
26 judgment and motion for reconsideration.  The parties have had the opportunity to submit
   evidence and briefing.  Furthermore, as noted, the Court will not rule upon the motion for
27 summary judgment.  The Court finds this summary proceeding suitable for determination
28 without oral argument, and therefore, the parties' requests are denied.

1   nominees (Id. ¶ 21).  Also at the time of the jeopardy levy execution, Wadman had listed his
2   Florida properties for sale (Id. ¶¶ 34, 38).

3        Wadman allegedly concealed his assets from IRS collection by commingling funds
4   with and taking title in the name of the entities, Golden West and Tri-Star (Id. ¶¶ 45-46).
5   Wadman also used these entities to advance his fraudulent refund scheme (Id. ¶¶ 2, 45).
6   Under his alleged fraudulent tax refund scheme, Wadman submitted false income tax returns
7   with numerous fake Forms 1099 (Id. ¶¶ 10-12).  Each of the Forms 1099 listed substantial
8   income purportedly paid by a publicly-traded corporation to Wadman, Golden West, or Tri-
9   Star and falsely claimed that 30% of the income was withheld as federal income tax (Id. ¶¶
10  12-13).  In fact, Wadman and his companies had not performed any work for the companies
11  listed on the Forms 1099 (Id. ¶¶ 15-16).  The public corporations had not paid any
12  compensation to Wadman or his companies, had not paid any taxes to the IRS, and had not
13  even heard of Wadman or his companies (Id.).  Furthermore, the fraudulently obtained
14  refunds were nearly the only deposits in the bank accounts of Wadman and his companies
15  (Id. ¶¶ 18-20).

16       Plaintiffs Wadman, Golden West, and Tri-Star filed their complaints against the
17  Government on July 27, 2005 (Dkt. 1 in CV 05-2237, 05-2238, 05-2239).  The Court
18  consolidated the three cases on February 28, 2006, with CV 05-2237 as the lead case (Dkt.
19  18).  Plaintiffs then filed an Amended Complaint (Dkt. 21).  Plaintiffs challenge the levies
20  as void due to the IRS's failure: (1) to mail a statutory Notice of Deficiency to Plaintiffs as
21  required by 26 U.S.C. § 6212 within 60 days of making the jeopardy assessment, and (2) to
22  provide a Written Statement of the information relied upon in making the assessment within
23  5 days as required by 26 U.S.C. § 7429  (Id. ¶¶ 11-16).  Plaintiffs further assert that the
24  jeopardy assessments and levies were unreasonable under 26 U.S.C. § 7429 (Id. ¶ 10).

25       Since filing the original complaint, Plaintiffs' counsel has withdrawn *four* times (Dkt.
26  3, Order signed August 5, 2005; Dkt. 14, Order signed January 4, 2006; Dkt. 33, Order
27  signed August 1, 2006; Dkt. 88, Order signed December 1, 2008).  The most recent attorneys
28  of record cited the "failure of Plaintiff William Wadman to fulfill his obligation to assist in

1    preparation of the case and irreconcilable conflicts of interest" as factors requiring them to

2    withdraw (Dkt. 87).  Currently, Plaintiffs are unrepresented by counsel.

3         On June 13, 2006, Wachovia moved to intervene.  On April 13, 2005, the IRS served

4    a Notice of Levy on Wachovia regarding Wadman's accounts at their bank (Dkt. 36,

5    Intervenor Comp. ¶¶ 7-8).  According to Wachovia, Wadman withdrew funds from his bank

6    accounts before the bank could secure them (Id. ¶ 11).  After the IRS sent a Final Demand

7    for Payment on July 11, 2005, Wachovia paid the IRS $436,628.97 from its own funds due

8    to its liability under 26 U.S.C. § 6332 (Id. ¶¶ 12-15).  Wachovia asserts that if the levies

9    issued against Wadman are found void, then it is entitled to a refund of its payment to the

10   IRS.  After applying the test for intervention as a matter of right and United States v.

11   Williams, 514 U.S. 527 (1995), the Court granted Wachovia's Motion to Intervene (Dkt. 34,

12   Order signed November 2, 2006).

13        On September 26, 2008, the Government moved for summary judgment (Dkt. 66).

14   Then on October 17, 2008, the Government moved for reconsideration of this Court's order

15   allowing Wachovia to intervene (Dkt. 74).

16                                   **DISCUSSION**

17        First, the Government contends that the IRS seized the property without notice

18   because the collection of Wadman's tax liabilities was in jeopardy.  As the IRS agents had

19   a good faith belief that the tax collection was in jeopardy, the Government asserts the

20   jeopardy levy executed against Wadman was reasonable under the circumstances.  Second,

21   the Government claims that Plaintiffs Golden West and Tri-Star are nominees or alter egos

22   of Wadman and lack standing to file wrongful levy actions.  Therefore, the Government

23   contends that it is entitled to judgment as a matter of law.

24   **I.    Jeopardy Assessment**

25        Ordinarily, the Commissioner of Internal Revenue must send notice of a proposed

26   deficiency to the taxpayer and wait 30 days before imposing an assessment or levy.  26

27   U.S.C. § 7429(a)(1)(A).  When the collection of taxes may be jeopardized by delay, though,

28   the Internal Revenue Code authorizes immediate assessment of taxes without prior notice and

summary action to collect the assessed taxes.  26 U.S.C. §§ 6861 (jeopardy assessment) and 6851 (termination assessment).[3]  The IRS regulations provide for a jeopardy assessment when a taxpayer "designs to do an act which would tend to prejudice proceedings to collect the income tax for such year or years unless such proceedings are brought without delay." 26 C.F.R. § 1.6851-1(a)(1).  "To ameliorate the hardships that may result from jeopardy assessments," the taxpayer may obtain summary review by a federal district court independent from an administrative review.  Mesher v. United States, 736 F. Supp. 233, 235 (D. Or. 1990) (citing 26 U.S.C. § 7429(b)).

A jeopardy review is an unappealable summary proceeding, and the scope of the jeopardy determination under section 7429 is limited to two questions:  1) whether the jeopardy assessment was reasonable under the circumstances; and 2) whether the amount assessed was appropriate.  Id.; Estate of Merchant v. C.I.R., 947 F.2d 1390, 1394 (9th Cir. 1991) (citing 26 U.S.C. § 7429(f)).  A jeopardy proceeding does not establish a taxpayer's ultimate liability for the taxes at issue, though.  Mesher, 736 F. Supp. at 235.  The taxpayer can challenge the ultimate tax liability in any proceeding brought at a later date in a tax court. See id.; see also Estate of Merchant, 947 F.2d at 1394.

Here, only the reasonableness of the jeopardy assessment is at issue.  Plaintiffs do not challenge the appropriateness of the amount of the jeopardy assessment.

### A.    Subject Matter Jurisdiction

As a preliminary matter, although the parties did not raise the issue, the Court should address whether it has subject matter jurisdiction over this action.  The statute requires a determination of the proceeding within twenty days after commencement of the action.  26 U.S.C. § 7429(b)(3).  The question is whether the court is deprived of subject matter jurisdiction because a plaintiff did not enforce his statutory right to a decision within twenty

---

[3] A jeopardy assessment is made for the tax year that has ended and for which the due date of filing return has passed, whereas a termination assessment is made for the tax year that either has not ended or for which the due date for filing a tax return has not yet passed. For convenience, the Court refers to a jeopardy assessment as the standards are the same.

days after commencing a proceeding regarding the reasonableness of the IRS action.  In Guillaume v. Commissioner, a district court applied both the Seventh and Eleventh Circuits' position on subject matter jurisdiction. 290 F. Supp. 2d at 1352 n. 3 (citing United States v. Doyle, 660 F.2d 277 (7th Cir. 1981); Meadows v. United States, 665 F.2d 1009, 1012 (11th Cir. 1982)).  Those circuits held that when the taxpayer failed to notify the district court of the twenty-day limit and "show[ed] minimal concern for his section 7429 right," the court may address the merits of the assessment.  Id.  Plaintiffs initiated this action on July 27, 2005, and nearly four years have passed since that date.  Plaintiffs failed to notify the Court of the twenty-day limit and have shown minimal concern for their section 7429 right.  Applying the reasoning in Guillaume, the Court finds it has jurisdiction and will address the reasonableness of the jeopardy assessment.

**B.     Reasonableness of Jeopardy Assessment**

The burden of proving the reasonableness of the jeopardy assessment is upon the Government.   26 U.S.C.  §  7429(g)(1).   The court considers three conditions when determining whether a jeopardy assessment is reasonable:  (1) the taxpayer is or appears to be planning to quickly depart from the United States or to conceal himself; (2) the taxpayer is or appears to be designing to place his property beyond the reach of the Government either by removing it from the United States or by concealing it, transferring it to other persons, or dissipating it; or (3) the taxpayer's financial solvency appears to be imperiled.  Nolan v. United States, 539 F. Supp. 788, 790 (D. Ariz. 1982) (citing S. Rep. No. 94-938, at 365 n.6 (1976)); 26 C.F.R. § 1.6851-1(a)(1).  If any one of the above three conditions exists, the making of a jeopardy assessment is reasonable.  See Nolan, 539 F. Supp. at 790.  In addition, the court typically considers the following factors:

(1) Possession of, or dealing in, large amounts of cash.
(2) Possession of narcotics or evidence of other illegal activities.
(3) Prior tax returns reporting little or no income despite the taxpayer's possession of large amounts of cash.
(4) Dissipation of assets through forfeiture, expenditures for attorneys' fees, appearance bonds, and other expenses.

- 6 -

(5) The lack of assets from which potential tax liability can be collected.

(6) Use of aliases, which makes it more difficult to locate either the taxpayer or any of his assets.

(7) Failure to supply appropriate financial information when requested.

(8) Multiple addresses, making it harder to find the taxpayer.

Mesher, 736 F. Supp. at 235-36 (citations omitted).  Furthermore, courts have found jeopardy assessments reasonable under specific circumstances.  Guillaume, 290 F. Supp. 2d at 1353. In particular, courts have found "involvement in illegal activity" and "erratic fiscal behavior" as sufficient to satisfy reasonableness.  Id. at 1353-54 (citations omitted).

When reviewing the assessment, the court may take into account information available to the Commissioner at the time of assessment, as well as any other information bearing on the issues.  Id. at 1353; Haskin v. United States, 444 F. Supp. 299, 304 (C.D. Cal. 1977) (citing S. Rep. No. 94-938, at 364).  Furthermore, because this is a summary proceeding, "the court is entitled to rely on evidence that might otherwise be inadmissible at trial on the merits."  Magluta v. United States, 952 F. Supp. 798, 801 (S.D. Fla. 1996) (citing Harvey v. United States, 730 F. Supp. 1097, 1104 (S.D. Fla. 1990)).

The court's review is "like a preliminary examination for probable cause in a criminal proceeding, but the standard of review differs."  Nolan, 539 F. Supp. at 790 (internal citation omitted).  "Reasonable and appropriate under the circumstances is a standard 'something more than not arbitrary or capricious and something less than supported by substantial evidence.'"  Id. (quoting Loretto v. United States, 440 F. Supp. 1168, 1172 (E.D. Pa. 1977). "In order to establish that the making of a jeopardy assessment is reasonable under the circumstances, the [IRS] need only establish that the taxpayer's circumstances *appear* to be jeopardizing collection of a tax – not whether they definitely do so."  Guillaume, 290 F. Supp. 2d at 1354 (emphasis in original) (internal citations omitted).

Here, the Government puts forth evidence that it believed Wadman perpetrated a massive fraudulent tax refund scheme, and he was about to conceal himself or his property. Wadman allegedly filed false income tax returns for the years 2001 through 2004 (DSOF ¶

- 7 -

22-26).  Wadman had been expecting tax refunds for the year ending December 31, 2004, but the IRS intercepted and froze them (Dkt. 66, Decl. of Karen Bloxham ¶ 10).  Shortly before the IRS issued the jeopardy levies, Wadman telephoned the IRS to inquire about the status of the refunds (Id.).  Therefore, Wadman may have been alerted to the fact that the Government was about to uncover his tax fraud (DSOF ¶ 21).  At the time of the seizure, Wadman had listed his Florida real properties for sale (Id. ¶¶ 34, 38).  Beginning on or about April 12, 2005, the Government began a seizure of Plaintiff Wadman's property (Am. Compl. ¶ 7).  Soon after the IRS seized his assets, Wadman left Florida and moved to Arizona (Dkt. 66, 8:25-27).  Wadman then used other nominee entities, Atlantic Industries Corporation ("Atlantic") and Metropolitan Partners Southwest, LLP ("Metropolitan"), in order to allegedly conceal his fraudulently obtained money (DSOF ¶¶ 55-59).  Wadman's behavior could have led the Government to believe either he was planning to quickly depart from the United States or conceal himself, or he was designing to place his property beyond the reach of the Government or conceal it.  See Nolan, 539 F. Supp. at 790.  Therefore, at least two conditions exist that make the assessment reasonable under the circumstances.

Additionally, other factors justify the assessment.  By moving from Florida to Arizona, Wadman used multiple addresses and made it harder for the Government to find him.  See Mesher, 736 F. Supp. at 236.  Wadman also used multiple aliases, which made it more difficult for the Government either to locate him or any of his assets.  See id.  IRS records indicate that under a Social Security number ending with 6742, an individual filed income tax returns from 1990-1992 under the name of Gary A. Emerson, from 1993-1997 under the name of Sean G. Black, and from 1998-2004 under the name of William G. Wadman, V (Dkt. 66, Decl. of Calvin Byrd ¶¶ 14-16).

Wadman explains one of his name changes, but he does not explain the other.  In 1995, Wadman admitted to presenting false statements to financial institutions, and he pled guilty to four counts of bank fraud (Dkt. 66, Ex. 9 to Decl. of G. Patrick Jennings).  After he completed his sentences in 1997, he began working as a controller for a company called G.B.

Data Systems, Inc.  In March 2000, he changed his name from Gary Alan Emerson to William Wadman, V (Dkt. 97, Pla.'s Responsive Statement of Facts ("PRSOF") ¶ 5). Wadman changed his name in violation of his probation terms (Dkt. 66, Ex. 9 to Decl. of G. Patrick Jennings).  Wadman alleges that he changed his name under seal because he acted as an undercover agent for the IRS's criminal investigation into G.B. Data Systems for tax violations and money-laundering (PRSOF ¶ 5).  Around the same time as his name change, though, Wadman also departed from the jurisdiction in violation of his probation terms (Id. ¶ 6).  These violations led to the revocation of his probation.  Furthermore, although Wadman's conviction occurred in 1995, it involved the crime of dishonesty.  Wadman's multiple addresses, multiples aliases, and criminal history, including a departure from a jurisdiction in violation of probation terms, are all factors that justify the IRS's action.  See Mesher, 736 F. Supp. at 235-36.

Importantly, the nature of Plaintiffs' alleged tax fraud scheme itself leads to a finding that the jeopardy assessment was reasonable under the circumstances.  Wadman allegedly fraudulently obtained tax refunds in excess of $1.2 million for the 2001 through 2004 tax years (DSOF ¶¶ 10).  The fraudulently obtained refunds were nearly the only deposits in the bank accounts of Wadman and his companies (Id. ¶¶ 18-20).  Under the scheme, Wadman submitted false income tax returns with numerous fake Forms 1099 (Id. ¶¶ 10-12).  Each of the fake Forms 1099 listed substantial income purportedly paid by a publicly-traded corporation to Wadman, Golden West, or Tri-Star and falsely claimed that 30% of the income was withheld as federal income tax (Id. ¶¶ 12-13).

An IRS investigative analyst from the Utah Fraud Detection Center, Karen Bloxham, became suspicious of the Forms 1099 because although they came from many different companies, the forms were similar in font and format (Dkt. 66, Decl. of Karen Bloxham ¶ 5). In Ms. Bloxham's experience, "different companies submit Forms 1099 that differ in font and format" (Id.).  Ms. Bloxham specifically contacted each of the companies listed on the Forms 1099 and took detailed, accurate notes of her telephone conversation with each

company (Id. ¶ 6).  None of the companies could confirm that Wadman and his companies performed any work for them (Id.).  The companies did not have the Social Security numbers or employer identification numbers (EIN) for Wadman, Golden West, or Tri-Star in their records (Id.).  None of the companies withheld any federal income tax for Wadman, Golden West, or Tri-Star (Id. ¶ 7).  The IRS alleges that Wadman's "use of publicly-traded corporations made it more difficult for the IRS to discover the fraud given the sheer volume of payments made each year by such entities" (Dkt. 66, 2 n. 1).  Indeed, the companies listed on the Forms 1099 are large corporations, including America West Airlines, Inc., AOL Time Warner, Inc., Coors Brewing Company, Dell Computer Marketing LP, General Mills Operations, Inc., Mercedez Benz, Sony Americas Holding Inc., Tyco International (US) Inc., Universal Studios, etc. (Dkt. 66, Exs. to Decl. of Karen Bloxham).

Wadman alleges that he has no personal knowledge of the 1099 forms and tax returns for himself or the entities (PRSOF ¶ 3).  Furthermore, he contends that financial professionals and tax attorneys either reviewed or completed all of the returns (Id. ¶¶ 10-14, 17, 22-25, 27).  A law firm titled "Hochman, Salkin, Deroy, Rettig" allegedly prepared Wadman's 2003 and 2004 tax returns, Golden West's 2003 and 2004 tax returns, and Tri-Star's 2003 tax returns.  To refute this allegation, the Government presents the affidavit of Avram Salkin, Esq. (Dkt. 66, Decl. of Avram Salkin ¶ 1).  Mr. Salkin is the sole shareholder of the law firm, Hochman Salkin Rettig Toscher & Perez, P.C., which practices in the field of taxation, among other areas (Id.).  However, Mr. Salkin avows that his law firm has no record of Wadman, Golden West, or Tri-Star ever being clients (Id. ¶ 4).  Although Wadman was a former client under the prior alias, Gary A. Emerson, the firm's billing records for Emerson do not reflect any activity after March 2001 (Id. ¶ 10).  Furthermore, an attorney with Mr. Salkin's firm, Nathan Hochman, only represented Emerson as criminal defense counsel for the previous bank fraud charges (Dkt. 66, Ex. 9 to Decl. of G. Patrick Jennings; Dkt. 99, Decl. of Nathan Hochman ¶ 2).  Mr. Salkin states that his law firm did not prepare Wadman's, Golden West's, or Tri-Star's tax returns (Dkt. 66, Decl. of Avram Salkin ¶ 3).

1    Furthermore, the law firm generally does not prepare returns for clients (Id. ¶ 6).  All of the

2    attorneys currently employed by the law firm, who were employed between 2003 and 2005,

3    have stated that the signatures on the tax returns are not theirs (Id. ¶ 5).  Furthermore, the

4    EIN and the name of the firm listed on the tax returns are very similar to, but are not, the

5    correct ones for Mr. Salkin's firm (Id. ¶¶ 7, 8).  Finally, the law firm does not use the titles

6    listed on the tax returns (Id. ¶ 9).  Therefore, the Government has shown that Wadman and

7    his entities likely submitted fraudulent Forms 1099 and tax returns.

8            Although the Government must only show "something more than not arbitrary or

9    capricious and something less than supported by substantial evidence," the Government has

10   put forth substantial information that Wadman engaged in a massive fraud.  See Nolan, 539

11   F. Supp. at 790.  Plaintiffs involvement in illegal activity itself satisfies the requirements of

12   reasonableness.  See Guillaume, 290 F. Supp. 2d at 1353-54.

13           Finally, it is worth noting the reason behind Wachovia's intervention in this action.

14   On April 13, 2005, the IRS served a Notice of Levy on Wachovia regarding Wadman's

15   accounts at the bank (Intervenor Comp. ¶¶ 7-8).  However, Wadman withdrew money in his

16   bank accounts before Wachovia could secure them (Id. ¶ 11).  After the IRS sent Wachovia

17   a Final Demand for Payment on July 11, 2005, Wachovia had to pay the IRS $436,628.97

18   from its own funds under the law (Id. ¶¶ 12-15).  Wadman acted swiftly in taking out his

19   Wachovia bank account money – nearly half of a million dollars.  This erratic fiscal behavior

20   in itself satisfies the conditions for finding the IRS's action reasonable under the

21   circumstances.  See Guillaume, 290 F. Supp. 2d at 1354.  Unlike Wachovia, the Government

22   acted faster than Wadman.  If the Government had not acted quickly, the tax collection very

23   well could have been jeopardized by delay.

24

25           Plaintiffs and Wachovia do not specifically deny the allegations, but they object to the

26   Government's evidence as hearsay.  As noted, though, the nature of this summary proceeding

27   allows the Court "to rely on evidence that might otherwise be inadmissible at trial on the

28   merits."  Magluta, 952 F. Supp. at 801.  Therefore, the Court may consider the hearsay

1    evidence from the IRS agents.  Additionally, the Court may consider information both

2    available at the time of the assessment and which has later come to light.  See Guillaume, 290

3    F. Supp. 2d at 1353; Haskin, 444 F. Supp. at 304.  As such, the Court has properly

4    considered all of the information bearing on the issues.  See id.

5           Plaintiffs and Wachovia also argue that no court has determined Wadman procured

6    his refunds by fraud.  Wadman devotes much of his facts in opposition to the motion for

7    summary judgment to show that his business dealings were legitimate.  Wadman alleges that

8    his companies are owned or affiliated with foreign companies in New Zealand, Australia, and

9    London, England (Dkt. 98, Pla.'s Statement of Facts ("PSOF") ¶¶ 1-3; PRSOF ¶ 2).

10    Wadman further alleges that the overseas locations conducted all major operations (PSOF

11    ¶ 3).  To bolster his credibility, Wadman submits award certificates, society memberships,

12    and charity letters[4] demonstrating his legitimate business dealings since his prior conviction

13    (PSOF ¶ 5).  The Government replies and produces evidence that Wadman spins a "fanciful

14    tale of multiple foreign jurisdictions," involving yet more made-up addresses, persons, and

15    companies (Dkt. 99).  Even if none of the tax fraud allegations are actually true, though, the

16    Court is only concerned with whether the jeopardy assessment was reasonable under the

17    circumstances.  In essence, the Court only determines whether the tax collection *appeared*

18    to be in jeopardy.  See Guillaume, 290 F. Supp. 2d at 1354.  Given the information available

19    at and since the time of the assessment, the Court finds that the collection of taxes appeared

20    to be in jeopardy and would have been jeopardized by delay.  Therefore, the jeopardy

21    assessment against Plaintiffs was reasonable under the circumstances.

22    ///

23

---

24        [4] Wadman attaches letters from a charity called Charity Network Foundation (Dkt.

25    98).  Wadman alleges he made cash donations to this organization (DSOF ¶ 60).  However, the Government asserts that Charity Network Foundation has not identified itself as a

26    charitable or religious organization under Section 501(c)(3) of the Internal Revenue Code (Dkt. 66, Decl. of Karen Bloxham ¶ 14).  Furthermore, IRS records indicate that Wadman

27    requested the EIN for Charity Network Foundation (Id.).  Therefore, the Government alleges

28    Wadman formed Charity Network Foundation and used it as another nominee (DSOF ¶ 60).

1

**C.     Alter Egos**

2

3        The Government contends that Golden West and Tri-Star are merely Wadman's alter

egos.   Therefore, the Government contends they lack standing to file this action.   The

4
Government presents the sworn affidavit of Calvin Byrd, an IRS Officer who investigated

5
this case (Dkt. 66, Decl. of Calvin Byrd).   Mr. Byrd makes compelling allegations that,

6
among other things, Wadman frequently transferred the same funds between Golden West,

7
Tri-Star, Atlantic, himself, and a person named Philip R. Black – who coincidentally shares

8
the same surname as one of Wadman's prior aliases, Sean G. Black (Id. ¶¶ 6-10).   The

9
Government asserts the commingling of funds demonstrates that Golden West and Tri-Star

10
are Wadman's alter egos, established solely for his benefit and to conceal his assets.

11
        Alternatively, the Government argues that if Golden West and Tri-Star are valid trusts,

12
then Wadman cannot represent them as they require counsel.   Because the Court has already

13
determined the reasonableness of the jeopardy assessment, the Court declines to determine

14
whether the entities are Wadman's alter egos under the law.   The Court only notes that the

15
erratic financial activity between Wadman and the entities is further justification that the

16
jeopardy assessment against Plaintiffs was reasonable under the circumstances.   See

17
Guillaume, 290 F. Supp. 2d at 1354.

18

**D.     Statutory Notice**

19

20        In their Amended Complaint, Plaintiffs also challenged the levies as void due to the

21
IRS's failure: (1) to mail a Statutory Notice of Deficiency to Plaintiff Wadman as required

22
by 26 U.S.C. § 6212 within 60 days of making the jeopardy assessment, and (2) to provide

23
a Written Statement of the information relied upon in making the assessment within 5 days

24
as required by 26 U.S.C. § 7429  (Am. Compl. ¶¶ 11-16).   Plaintiffs requested relief in the

25
form of an order declaring the jeopardy assessment invalid and void, and an order enjoining

26
the Government from levying upon or seizing Plaintiffs' assets in the future (Id. at 7).

27

28

1    If the IRS does not provide notice, the statute does not automatically void the
2 jeopardy assessment.  The statute limits the district court's summary review to the issues of
3 reasonableness and appropriateness.  26 U.S.C. § 7429(b)(3).  However, there is some
4 authority stating that the failure to give notice may be fatal to the jeopardy assessment.  See
5 e.g., Perlowin v. Sassi, 711 F.2d 910, 911 (9th Cir. 1983).  If a court finds an assessment
6 improper, though, injunctive relief is not mandatory.  Id. at 912.  "Along with a showing of
7 improper assessment, the taxpayer must prove irreparable injury and an absence of an
8 adequate legal remedy" in order to obtain injunctive relief.  Id.; see Latch v. United States,
9 842 F.2d 1031 (9th Cir. 1988) (district court may not consider suit that seeks to enjoin
10 collection or assessment of federal taxes unless it is clear that under no circumstances could
11 the Government prevail and equity jurisdiction otherwise exists); Cool Fuel, Inc. v. Connett,
12 685 F.2d 309 (9th Cir. 1982) (taxpayer not entitled to injunctive relief based on showing
13 alone that assessment had been made prior to valid notice of deficiency, and taxpayer must
14 show usual equitable prerequisites).  The statute also provides the court with various options
15 for relief, including the abatement or redetermination of the assessment, or the taking of such
16 action as the court finds appropriate.  26 U.S.C. § 7429(b)(4).

17    The parties do not dispute that the IRS made the jeopardy assessment without prior
18 notice to Plaintiffs.  Therefore, the IRS should have given notice within 60 days and provided
19 a written statement of the information it relied upon within 5 days of making the assessment.
20 However, the parties do not clearly address whether the IRS provided proper statutory notice.
21 Although Plaintiffs alleged in their Amended Complaint that the IRS did not provide notice
22 (Am. Compl. ¶ 15), Plaintiffs do not address that issue again.  The Government also does not
23 address whether it provided proper notice in its motion for summary judgment.  The
24 Government notes that a taxpayer may seek administrative review within 30 days after the
25 IRS furnished a Written Statement (Dkt. 66, 4:10-14).  The Government then simply states
26 that Wadman sought administrative review within 30 days, and the administrative review
27 sustained the collection action (Id. at 4:14-15).

28

1    As noted, the Court has already determined that the jeopardy assessment was

2  reasonable under the circumstances.  Even if the Court determined that the lack of notice

3  rendered the assessment fatal, Plaintiffs have not proven "irreparable injury and an absence

4  of an adequate legal remedy" in order to obtain injunctive relief, as will be discussed below.

5  Perlowin, 711 F.2d at 912.  Furthermore, the Court has discretion to take such action as the

6  Court finds appropriate.  See 26 U.S.C. § 7429(b)(4).  The Court could not have considered

7  an injunction because the Court already determined it lacked jurisdiction to grant such relief

8  (Dkt. 35, Order signed December 15, 2006).  After the Government previously moved to

9  dismiss, the Court made this determination and dismissed that portion of Plaintiffs' Amended

10  Complaint (Id.).  The Court reached this ruling on the merits and because Plaintiffs did not

11  respond to the Government's motion to dismiss (Id.).  Therefore, Plaintiffs are not entitled

12  to injunctive relief.

13    In taking appropriate action, if the Court had made its reasonableness determination

14  within the twenty-day period as contemplated by the statute, the Court in its discretion could

15  have simply ordered the IRS to provide proper statutory notice.  See 26 U.S.C. § 7429(b)(4).

16  Congress recognized the hardships that may result from a jeopardy assessment.  Mesher, 736

17  F. Supp. at 235 (citing 26 U.S.C. § 7429(b)).  Therefore, it provided taxpayers the

18  opportunity to obtain summary review by a federal district court within twenty days.  Id.

19  Though, what should have been a twenty-day proceeding has spun into a nearly four year

20  proceeding, and the delay of this action can be primarily attributed to Plaintiffs.  Plaintiffs'

21  numerous withdrawals of counsel and own behavior have derailed the summary nature of this

22  proceeding.

23    Moreover, even if the Court enforced the statutory notice requirement, the notice

24  would have simply enabled Plaintiff to challenge the assessment in Tax Court.  Since filing

25  this action, though, Wadman filed for Chapter 11 bankruptcy (PRSOF ¶ 4).  If the taxpayer

26  is involved in a bankruptcy proceeding at the time the deficiency notice is mailed, then the

27  taxpayer is prohibited from filing a petition in Tax Court during the pendency of the Chapter

28

1   11 proceedings.   11 U.S.C. § 362(a)(8).   Wadman is contesting the merits of the tax

2   assessments in Bankruptcy Court (Dkt. 89, 4:17-19).  On May 30, 2007, Wadman objected

3   to the IRS's proof of claim containing the jeopardy assessments (Id. at 4:20-22).   The

4   Bankruptcy Court has jurisdiction to "determine the amount or legality of any tax, any fine

5   or penalty relating to a tax, or any addition to tax, whether or not previously assessed,

6   whether or not paid, and whether or not contested before and adjudicated by a judicial or

7   administrative tribunal of competent jurisdiction."  See Am. Principals Leasing Corp. v.

8   United States, 904 F.2d 477, 480-81 (9th Cir. 1990) (citing 11 U.S.C. § 505(a)(1)).

9   Therefore, even if statutory notice allowed Wadman to bring an action in Tax Court, the

10   bankruptcy proceedings would most likely supersede the tax proceedings. See 11 U.S.C.A.

11   § 362(a)(8).

12   Furthermore, some of the seized property at issue before this Court is no longer

13   actually before this Court.  In this Court, the parties have *twice* stipulated to a sale of the

14   seized property at issue.  The parties further stipulated that the Court send the sale proceeds

15   to Wadman's bankruptcy counsel for holding, pending further order of the Bankruptcy Court

16   (Dkts. 51-52, 59-63).   Therefore, the Court cannot return this property.  As Wadman is

17   challenging the tax assessment in Bankruptcy Court, Wadman is not without a remedy, and

18   the notice issue seems moot.  See Perlowin, 711 F.2d at 912 ("Along with a showing of

19   improper assessment, the taxpayer must prove irreparable injury and an absence of an

20   adequate legal remedy."); see also Roat v. C.I.R., 847 F.2d 1379, 1383 (9th Cir. 1988)

21   (holding that taxpayer could not enjoin the IRS from assessing deficiencies when the IRS

22   prevailed on issue of whether determinations were lawful and taxpayers had adequate legal

23   remedies available).

24   **II.    Motion for Reconsideration**

25

26   Finally, the Government requests the Court reconsider its earlier decision allowing

27   Wachovia to intervene. The Government contends that the Supreme Court's interim decision

28   in EC Term of Years Trust v. United States, 550 U.S. 429 (2007), overruled the basis for the

Court allowing Wachovia's intervention, <u>United States v. Williams</u>, 514 U.S. 527. The Court notes that Wachovia is also pursuing relief in Bankruptcy Court.  As the Court has determined the jeopardy assessment as reasonable under the circumstances, the Court will deny the pending motion for reconsideration as moot.  <u>See</u> <u>Guillaume</u>, 290 F. Supp. 2d at 1356.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Enjoin [sic] Wachovia Bank's Response to the Government's Motion for Summary Judgment (Dkt. 95) is **GRANTED**.

**IT IS FURTHER ORDERED** that the making of the jeopardy assessment is reasonable under the circumstances pursuant to 26 U.S.C. § 7429.

**IT IS FURTHER ORDERED** that the Government's Motion for Summary Judgment (Dkt. 66) and Motion for Reconsideration of Order Granting Intervention (Dkt. 74) are **DENIED** as moot.

 **IT IS FURTHER ORDERED** that Plaintiffs' Amended Complaint (Dkt. 21) is **DISMISSED**, and the Clerk of Court shall terminate this matter (CV 05-2237, 05-2238, and 05-2239).

DATED this 21st day of May, 2009.

Stephen M. McNamee
United States District Judge